AO 91 (Rev. 11/11) Criminal Complaint

**FILED**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

JAN 2 4 2014

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES OF AMERICA

v.

CHARLES DEHAAN

CASE NUMBER:
~~UNDER SEAL~~   14 CR 50005

~~14 M 0001~~

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about December 11, 2013, at Rockford, in the Northern District of Illinois, Western Division, and elsewhere, the defendant, CHARLES DEHAAN, violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 1347 | Defendant did knowingly and willfully participate in a scheme to defraud a health care benefit program, namely, Medicare, and to obtain money owned by and under the custody and control of Medicare by means of false and fraudulent pretenses, representations, and promises, in connection with the delivery of and payment for health care benefits, items, and services, and, on or about December 11, 2013, did execute the scheme by knowingly and willfully submitting and causing to be submitted a false claim, specifically, that he provided services to L.S. at the highest level of care, using CPT code 99350. |

This criminal complaint is based upon these facts:

__X__ Continued on the attached sheet.

_Christy J. Wells_

CHRISTY WELLS
Special Agent, Department of Health and Human Services, Office of Inspector General

Sworn to before me and signed in my presence.
Date: January 24, 2014

_____
Judge's signature

City and state: Rockford, Illinois

Iain D. Johnston, U.S. Magistrate Judge
Printed name and Title

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## AFFIDAVIT

I, CHRISTY WELLS, being duly sworn, state as follows:

### I. Introduction

1.     I am a Special Agent of the United States Department of Health and Human Services, Office of Inspector General, and I have been so employed since January 2011.  I have received training in the area of criminal investigation, including physical and electronic surveillance, conducting undercover investigations, and interviewing defendants and witnesses.  My current responsibilities include investigating allegations of fraud involving government-funded health care programs, including the Medicare and Medicaid programs.

2.     As a DHHS/OIG Special Agent, I have participated in numerous health care fraud investigations, including investigations of physicians, in violation of Title 18, United States Code, Sections 1347, 1341, and 1343.  As a result of my training and experience, I have become familiar with the methods in which criminals conduct health care fraud, including fraudulent billing for medical services that were not provided or were not medically necessary.

3.     This affidavit is made in support of applications for warrants to search the business premises of two related home health care providers, namely, Housecall

Physicians Group of Rockford, located at 124 North Water Street, Suite 208,
Rockford, Illinois 61107 and the residence of Dr, CHARLES DEHAAN, located at
1635 Hidden Creek Lane, Belvidere, Illinois 61008. This affidavit is also submitted
in support of a criminal complaint charging CHARLES DEHAAN with health care
fraud in violation of Title 18, United States Codes, Section 1347. The purpose of the
searches is to obtain evidence of violations of Title 18, United States Code, Section
1347 (health care fraud).

4.    As described in more detail below, there is probable cause to believe
that DEHAAN has knowingly and willfully defrauded the Medicare program by
submitting false claims for reimbursement of home visiting physician services
allegedly provided to elderly people, which services were never provided and were
not medically necessary, and fraudulently obtained money from the Medicare
program. There also is probable cause to believe that such fraud is ongoing and
that evidence of past and current fraudulent activity, consisting primarily of records
(in hard copy and electronic form), is located at the premises to be searched. The
properties to be searched and the items to be seized are described more fully in the
attachments to this affidavit.

5.    The investigation of DEHAAN is being conducted jointly by
DHHS/OIG and the Federal Bureau of Investigation. I have knowledge of the facts
set forth in this affidavit as a result of my participation in the investigation. More
specifically, I have reviewed reports prepared by other agents and investigators,

2

including an investigator for the Illinois Department of Financial and Professional Regulation, and reviewed other evidence obtained during the investigation, including Medicare billing records. I also have discussed the facts of this investigation, as summarized herein, with other agents and investigators who had information relevant to the investigation.

6. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of arrest and search warrant applications, this affidavit does not contain all of the facts known by me with regard to the investigation and the individuals and events described herein. All witness interviews and conversations referenced in this affidavit are described in summary, non-verbatim form; such summaries do not constitute, and do not purport to be, detailed recitations of all statements made by all of the participants in the interviews and/or conversations. Finally, all dates and dollar amounts referenced herein are approximate.

## The Medicare Program

7. Medicare is a federally-funded national health care benefit program that provides free or below-cost health care benefits to certain eligible individuals, primarily individuals who are least 65 years of age or who have certain disabilities. Medicare is comprised of several different "parts," most notably: "Part A," which covers a portion of the costs of hospital inpatient stays and home health care; and "Part B," which covers a portion of certain outpatient physician visits and services.

3

8. Medicare is administered by the Centers for Medicare and Medicaid Services, an agency of DHHS. CMS in turn contracts with other organizations, usually health insurance carriers, to process Medicare claims and to perform certain administrative functions. In Illinois, CMS currently contracts with a health insurance carrier known as Wisconsin Physicians Services to administer and pay Part B claims from the Medicare Trust Fund. The Medicare Trust Fund is a reserve of monies provided by the federal government. WPS processes Medicare Part B claims submitted for physicians' services for beneficiaries in multiple states including Illinois, Indiana, and Michigan.

9. Enrolled providers of medical services to Medicare recipients are eligible for reimbursement for covered medical services. By becoming a participating provider in Medicare, enrolled providers agree to abide by the rules, regulations, policies, and procedures governing reimbursement, and to keep and allow access to records and information as required by Medicare.

10. Providers of health care services to Medicare beneficiaries seeking reimbursement under the program must submit a claim form, called a "CMS 1500," with certain information regarding the Medicare beneficiary, including the beneficiary's name, health insurance claim number, date the service was rendered, location where the service was rendered, type of services provided, number of services rendered, the procedure code (described further below), a diagnosis code (known as an "ICD-9 code"), charges for each service provided, the provider's unique

4

identifier (known as a Provider Transaction Access Number), and a certification that such services were personally rendered by that provider.

11.     In order to become a Medicare provider, a provider must file a Form CMS 855 which, among other things, identifies the provider's practice location, billing agency, medical record storage facilities, and an authorized contact person. The medical record storage facility identified by the provider is where the provider stores medical records of patients billed for Medicare services. Typically, the records must be kept for five years after the date of billing. An identified location is necessary for CMS auditors to perform required audits of the patient files.

12.     The American Medical Association has established certain codes to identify medical services and procedures performed by physicians, which are collectively known as the Physicians' Current Procedural Terminology system. The CPT system provides a national correct coding practice for reporting services performed by physicians and for payment of Medicare claims. CPT codes are widely used and accepted by health care providers and insurers, including Medicare and other health care benefit programs.

13.     The American Medical Association has established CPT codes for home visits with new and established patients. Since 1998, home visits with new patients are billed using CPT codes 99341 through 99345, and home visits with established patients are billed using CPT codes 99347 through 99350. Higher CPT codes within

5

the 99341-99345 range and the 99347-99350 range indicate visits of a more complicated nature.

14. Specifically, according to the American Medical Association's annual Current Procedural Terminology manuals, since 1998, a home visit with an established patient is billed based on three key components: (1) the extent of the patient history that the physician takes during the visit, (2) the extent of the examination performed by the physician during the visit, and (3) the medical decision making done by the physician, which refers to the "complexity of establishing a diagnosis and/or selecting a management option."

15. According to the CPT manuals, medical decision making is measured by: (1) "the number of possible diagnoses and/or the number of management options that must be considered," (2) "the amount and/or complexity of medical records, diagnostic tests, and/or other information that must be obtained, reviewed, and analyzed," and (3) "the risk of significant complications, morbidity, and/or mortality, as well as comorbidities, associated with the patient's presenting problems(s) (sic), the diagnostic procedure(s), and/or the possible management options." The table below is from the Centers for Medicare and Medicaid Services' Evaluation and Management Services Guide, and summarizes what is involved with each kind of medical decision making.

6

| TYPE OF DECISION MAKING | NUMBER OF DIAGNOSES OR MANAGEMENT OPTIONS | AMOUNT AND/ OR COMPLEXITY OF DATA TO BE REVIEWED | RISK OF SIGNIFICANT COMPLICATIONS, MORBIDITY, AND/OR MORTALITY |
|---|---|---|---|
| Straightforward | Minimal | Minimal or None | Minimal |
| Low Complexity | Limited | Limited | Low |
| Moderate Complexity | Multiple | Moderate | Moderate |
| High Complexity | Extensive | Extensive | High |

16.    According to the American Medical Association's annual Current Procedural Terminology manuals, since 1998, for a home visit with an established patient to be billed properly under CPT code 99347, it must have at least two of the following key components:

-    A problem focused interval history, which covers the "chief complaint; brief history of present illness or problem"

-    A problem focused examination, which is a "limited examination of the affected body or organ system"

-    Straightforward medical decision making

17.    According to the CPT manuals, a home visit that qualifies for CPT code 99347 "usually" involves a problem or problems that are "self limited or minor," which is defined as a "problem that runs a definite and prescribed course, is transient in nature, is not likely to permanently alter health status OR has a good prognosis with management/compliance." According to the manuals, "Physicians typically spend 15 minutes face-to-face with the patient and/or family."

7

18.     According to the CPT manuals, since 1998, for a home visit with an established patient to be billed properly under CPT code 99348, it must have at least two of the following key components:

- An expanded problem focused interval history, which covers the "chief complaint; brief history of present illness; problem pertinent system review"

- An expanded problem focused examination, which is a "limited examination of the affected body area or organ system and other symptomatic or related organ system(s)"

- Medical decision making of low complexity

19.     According to the CPT manuals, a home visit that qualifies for CPT code 99348 "usually" involves a problem or problems that are "of low to moderate severity." According to the CPT manuals, a problem of "low severity" is one "where the risk of morbidity without treatment is low; there is little to no risk of mortality without treatment; full recovery without functional impairment is expected." According to the CPT manuals, a problem of "moderate" severity is one "where the risk of morbidity without treatment is moderate; there is a moderate risk of mortality without treatment; uncertain prognosis OR increased probability of prolonged functional impairment." According to the manuals, "Physicians typically spend 25 minutes face-to-face with the patient and/or family."

20.     According to the CPT manuals, since 1998, for a home visit with an established  patient to be billed properly under CPT 99349, it must have at least two of the following key components:

8

- A detailed interval history, which covers the "chief complaint; extended history of present illness; problem pertinent system review extended to include a review of a limited number of additional systems; pertinent past, family, and/or social history directly related to the patient's problems"

- A detailed examination, which is an "extended examination of the affected body area(s) and other symptomatic or related organ systems(s)"

- Medical decision making of moderate complexity

21.    According to the CPT manuals, a home visit that qualifies for CPT code 99349 "usually" involves a problem or problems of "moderate to high severity." According to the CPT manuals, a problem of "high" severity is one where "the risk of morbidity without treatment is high to extreme; there is a moderate to high risk of morbidity without treatment OR high probability of severe, prolonged functional impairment."  According to the manuals, "Physicians typically spend 40 minutes face-to-face with the patient and/or family."

22.    According to the CPT manuals, since 1998, for a home visit with an established patient to be billed properly under CPT code 99350, it must have two of the following key components:

- A comprehensive interval history, which covers the "chief complaint; extended history of present illness; review of systems that is directly related to the problem(s) identified in the history of the present illness plus a review of all additional body systems; **complete** past, family and social history" (bold in original)

- A comprehensive examination, which is defined as a "general multisystem examination or a complete examination of a single organ system"

9

- Medical decision making of moderate to high complexity

23. According to the AMA's CPT manual, a home visit that qualifies for CPT code 99350 "usually" involves a problem or problems of "moderate to high severity." According to the manuals, "The patient may be unstable or may have developed a significant new problem requiring immediate physician attention. Physicians typically spend 60 minutes face-to-face with the patient and/or family."

24. The Centers for Medicare and Medicaid Services' Evaluation and Management Services Guide, which includes documentation guidelines from 1995 and 1997, provides further guidance on what is involved for each of the types of histories referenced in the CPT manuals. The following table is taken from the Evaluation and Management Services Guide and summarizes what is involved for each type of history:

| TYPE OF HISTORY | CHIEF COMPLAINT | HISTORY OF PRESENT ILLNESS | REVIEW OF SYSTEMS | PAST, FAMILY, AND/OR SOCIAL HISTORY |
|---|---|---|---|---|
| Problem Focused | Required | Brief | N/A | N/A |
| Expanded Problem Focused | Required | Brief | Problem Pertinent | N/A |
| Detailed | Required | Extended | Extended | Pertinent |
| Comprehensive | Required | Extended | Complete | Complete |

25. According to the Centers for Medicare and Medicaid Services' Medicare Claims Processing Manual, Chapter 12, "[m]edical necessity of a service is the overarching criterion for payment in addition to the individual requirements of a

10

CPT code. It would not be medically necessary or appropriate to bill a higher level of evaluation and management service when a lower level of service is warranted."

26.    In addition, the Medicare Claims Processing Manual states as follows regarding a comprehensive history, which is one of the key components for billing a home visit with an established-patient using CPT code 99350:

> The comprehensive history must include a review of all the systems and a complete past (medical and surgical) family and social history obtained at that visit. In the case of an established patient, it is acceptable for a physician to review the existing record and update it to reflect only changes in the patient's medical, family, and social history from the last encounter, but the physician must review the entire history for it to be considered a comprehensive history.

27.    Medicare payments on claims under CPT codes 99347 and 99348 generally are less than the payments on claims under CPT codes 99349 and 99350. The table below summarizes the requirements and typical characteristics of established-patient visits that are correctly billed using CPT codes 99347 through 99350, along with the approximate fees paid for such visits in the Chicago area in both 2009 and 2013.

| CPT code | Interval history or examination | Medical decision making | Typical problem | Typical amount of time | Approximate fees for Chicago (2009 / 13) |
|---|---|---|---|---|---|
| 99347 | Problem focused | Straightforward | Self limited or minor | 15 minutes | $56.13 / $58.94 |
| 99348 | Expanded problem focused | Low | Low to moderate severity | 25 minutes | $84.46 / $88.91 |

11

| CPT code | Interval history or examination | Medical decision making | Typical problem | Typical amount of time | Approximate fees for Chicago (2009 / 13) |
|---|---|---|---|---|---|
| 99349 | Detailed | Moderate complexity | Moderate to high severity | 40 minutes | $122.82 / $134.45 |
| 99350 | Comprehensive | Moderate to high complexity | Unstable patient or significant new problem requiring immediate physician | 60 minutes | $171.25 / $187.70 |

## Evidence Supporting Probable Cause

28.     Records of the Illinois Secretary of State indicate that Housecall Physicians Group of Rockford, S.C., is presided over by CHARLES S. DEHAAN, MD at 124 North Water Street, Rockford, Illinois 61107. Housecall Physicians Group of Rockford, S.C. is listed as having the previous business names of "MD@HOME," "House Calls of Greater Chicago, S.C.," and "MD At Home, S.C."

29.     In 2004, DEHAAN was approved for enrollment in the Medicare program. DEHAAN is listed, according to Medicare enrollment data, as having ownership in Housecall Physicians Group of Rockford, S.C.

**Beneficiary S.L.**

30.     Law enforcement agents interviewed Medicare beneficiary S.L. S.L. stated that she was a resident of an assisted living center in Rockford, Illinois as of October 2010. According to S.L., while living at this center, S.L. was in need of a

12

motorized scooter due to an injury to her hip. S.L. stated that DEHAAN was sent to S.L.'s room to perform the evaluation and measurements for the motorized wheelchair. S.L. stated that while measuring S.L. for the wheelchair, DEHAAN began rubbing and caressing S.L.'s breasts. S.L. told DEHAAN to stop what he was doing, at which time he did. DEHAAN then finished his measurements and concluded the visit.

31.    S.L. stated that DEHAAN returned to her unit at the assisted living center a few weeks later. DEHAAN entered S.L.'s unit and quickly exposed his penis to S.L. through his hospital scrubs. S.L. asked DEHAAN what he was doing, to which he responded with words to the effect of "you turn me on." S.L. ordered DEHAAN to immediately leave her home. DEHAAN left her home without performing any medical evaluation or services of any kind.

32.    According to S.L., on or about December 8, 2010, S.L. moved to another assisted living facility in Rockford, Illinois. Shortly after moving in, DEHAAN again appeared at S.L.'s front door. He told S.L. that he was the medical director at the facility and as such, had a right to come into her unit. S.L. stated that she did not want to allow DEHAAN into her room, but felt that she had no choice. DEHAAN initially went into S.L.'s bathroom and exited with his penis outside of his pants. DEHAAN told S.L. that if S.L. would provide him sexual gratification, he would give S.L. a prescription for any medication that S.L. wanted. S.L. refused and ordered DEHAAN to leave her unit.

13

33. According to S.L., on or about January of 2013, S.L. moved into another facility in in Rockford, Illinois. Soon after moving in, DEHAAN again came to S.L.'s door and demanded to be allowed access. DEHAAN told S.L. that he was the medical director at that facility as well and had access to her unit. DEHAAN entered her unit briefly before S.L. ordered him to leave.

34. S.L. stated that DEHAAN never provided any medical services to her other than the initial measurements taken for the motorized scooter. At no time during any of the other instances in which DEHAAN was in S.L.'s presence did S.L. allow DEHAAN to touch S.L., and he never performed any medical evaluations of her, nor provided her with any medical service.[1]

35. According to Medicare billing data, DEHAAN billed, and was paid by Medicare, for the following services for S.L:

| Date of Service | Procedure Code | Amount Actually Paid to DEHAAN |
| --- | --- | --- |
| 10/06/2010 | 99345 | $166.30 |
| 10/20/2010 | 99350 | $134.67 |
| 12/01/2010 | 99349 | $96.18 |
| 01/17/2011 | 99349 | $0.00 |
| 02/28/2011 | 99349 | $96.57 |
| 05/20/2013 | 99345 | $165.64 |

---

[1] According to Rockford Police reports, in 2011, S.L made a police report complaining about DEHAAN and at that time, the allegations were consistent with the information above.

14

**Interview of L.S.**

36. Law enforcement agents interviewed Medicare beneficiary L.S. L.S. stated that DEHAAN became L.S.'s physician around Spring of 2009, when L.S's regular physician was no longer available. L.S. was familiar with DEHAAN as the physician for L.S.'s spouse, who died in or around 2007.

37. L.S. stated that during his first visit to her home, DEHAAN began "messing around with me," which L.S. described as fondling L.S.'s breasts. L.S. stated that during this first visit, DEHAAN told L.S. words to the effect that L.S. "needed a man in her life," and "needed a man to take care of her." During that first visit, DEHAAN exposed his penis to L.S. and told L.S. to "shake it off." L.S. stated that DEHAAN placed his penis in L.S.'s hand and had her "playing with him," and then he took his penis in his own hand and he was "playing with himself."

38. L.S. stated that since this incident in 2009, DEHAAN routinely had L.S. perform sexual gratification on him in a similar manner with her hands. According to L.S., this occurred about once every two months, which is how often DEHAAN visited L.S. at home. L.S. stated that from 2009 until approximately December 2013, DEHAAN met her only for sexual contact and performed no medical services for L.S.

39. L.S. stated that DEHAAN told her that he would write her prescriptions for any medications that L.S. wanted. L.S. stated that L.S. only asked that he continue to fill prescriptions for medications that L.S. had been taking for

15

most of her life. L.S. stated that she was frightened to report DEHAAN's behavior for fear he would discontinue L.S.'s Medicare coverage and L.S.'s medications.

40.     According to Medicare billing data, DEHAAN billed, and was paid by Medicare, for the following services billed under CPT codes 99349 and 99350 since March 2013:

| Date of Service | Procedure Code | Amount Paid to DEHAAN |
| --- | --- | --- |
| 03/27/2013 | 99350 | $136.86 |
| 04/10/2013 | 99349 | $96.24 |
| 04/24/2013 | 99349 | $96.24 |
| 05/08/2013 | 99349 | $96.24 |
| 05/29/2013 | 99349 | $96.24 |
| 07/17/2013 | 99350 | $134.12 |
| 08/14/2013 | 99350 | $134.12 |
| 09/16/2013 | 99350 | $134.12 |
| 10/02/2013 | 99350 | $134.12 |
| 12/11/2013 | 99350 | $134.12 |

41.     L.S. stated that she had reviewed Explanations of Benefits forms sent to her from Medicare, and saw that DEHAAN was paid by Medicare for removal of earwax that she knows was never performed. L.S. produced this EOB for

16

interviewing agents, which showed a procedure supposedly performed on March 27, 2013, CPT Code 69210, which is removal of earwax, for which DEHAAN was paid $40.92. Medicare records showed that DEHAAN also billed for CPT Code 69210 on July 17, 2013, and was paid $40.10. L.S. stated that this service was never provided to her.

**Interview of S.P.**

42. Law enforcement agents interviewed Medicare beneficiary S.P. S.P. stated that in May 2011 DEHAAN came to S.P.'s room at a supportive living facility in Rockford, Illinois in order to evaluate S.P.'s ankle pain. S.P. stated that DEHAAN began to rub S.P.'s leg and then moved his hand towards S.P.'s genital area. S.P. then pushed DEHAAN's hand away and told DEHAAN to stop.

43. S.P. stated that DEHAAN again moved his hand toward the genital area, and again S.P. told DEHAAN to stop. DEHAAN then stood up and S.P. noticed that DEHAAN's penis was erect, visible beneath his medical scrubs. After standing up with his erection displayed, DEHAAN left S.P.'s room.[2] S.P. stated she refused to see DEHAAN after this May 2011 incident.

44. According to Medicare data, DEHAAN continued to bill for services purportedly rendered to S.P. after May 2011, including billing Medicare on

---

[2] According to Rockford Police reports, in 2011, S.P made a police report complaining about DEHAAN and at that time, the allegations were consistent with the information above.

November 20, 2013 for CPT code 99349 for the visit with S.P and was paid $96.24 for services purportedly rendered to S.P.

**Interview of D.D.**

45.     Law enforcement interviewed Medicare beneficiary D.D.  D.D. stated that he resided in an apartment complex at which DEHAAN had a number of other patients.     D.D. stated that he knows DEHAAN from the complex, but that DEHAAN has never been in his residence and has never provided D.D. with medical treatment.

46.     According to Medicare data, DEHAAN billed Medicare for dates of service on April 22, 2011, using CPT code 99344, and was paid $48.41 for services purportedly rendered to D.D. on that date.  And DEHAAN billed for a date of service on May 10, 2011, using CPT code 99349, and was paid $96.57 for services purportedly rendered to DD.

**Petition for Temporary Suspension**

47.     On or about January 14, 2014, the Illinois Department of Financial and Professional Regulation, Division of Professional Regulation, filed a Petition for Temporary Suspension against DEHAAN.  According to this Petition, DEHAAN had inappropriate sexual contact with additional patients, including M.H.

48.     Law enforcement interviewed M.H., and M.H. stated that M.H. had sex with DEHAAN numerous times in approximately 2010 because DEHAAN agreed to prescribe her controlled substances, including Ritalin and Norco.     In

18

exchange for the prescribed medications, M.H. had sex with DEHAAN approximately two to three times a month for approximately six months. M.H. stated that on one occasion, DEHAAN performed a breast exam on M.H, but he did not perform any other medical services.

49. According to Medicare billing data, DEHAAN billed, and was paid by Medicare, for the following services for M.H.:

| Date of Service | Procedure Code | Amount Paid to DEHAAN |
|---|---|---|
| 01/15/2013 | G0179 | $31.65 |
| 2/12/2013 | 99349 | $98.20 |
| 2/25/2013 | G0180 | $0 |
| 2/27/2013 | G0181 | $82.39 |
| 2/28/2013 | 69210 | $40.92 |
| 2/28/2013 | 94060 | $47.66 |
| 2/28/2013 | 99350 | $136.86 |
| 3/8/2013 | 99349 | $98.20 |

**Records to be Seized**

50. Based on my experience and training, I know that physicians, such as DEHAAN, that conduct house calls or perform home health care visits often keep records at their business and at their home because of frequent travel. Although required to identify on the CMS Form 855 a location where he was going to store

19

Medicare patient records, DEHAAN did not limit the location of his records to his office.

51.     Based on my training and experience, I also know that physicians, such as DEHAAN, that conduct house calls or perform home health care visits often maintain electronic patient records. Given the frequent travel require for a home health physician, I know that often these records are kept on computers, hard drives, thumb drives, compact discs and other electronic media. I also know that DEHAAN files his Medicare billing electronically.

52.     In addition to any electronically stored data, paper records such as patient medical files, examination reports, logs and notes of medical personnel and staff members, appointment records, and payroll and tax records should be maintained in the normal course of the daily business activities of the medical business. By federal regulation (42 C.F.R. § 482.24), DEHAAN is required to maintain patient files for a minimum of five years.

53.     Also, in my experience from investigating health care fraud cases, I am aware that health care providers generally maintain:

> (a)     patient and billing records for long periods of time. Many patients need ongoing care and their health care providers need to review medical records for purposes of providing that ongoing care and for purposes of resolving disputes with medical professionals, hospitals, patients, and/or insurance companies. Home health care providers rely on these records to confirm what services were provided, when the services were provided, and where the services were provided to particular patients;

> (b)     Medicare and insurance manuals, documents, contracts, bulletins, and instructions. These manuals and records provide information

relating to the proper procedures for submitting Medicare and insurance claims;

(c)     records of internal communications with their employees, such as policy memoranda, procedures and directions for processing and submitting claims to Medicare and/or insurance companies, procedures and directions for conducting patient assessments, and internal communications relating to the processing and handling of claims for reimbursement for specific patients;

(d)     Medicare and insurance billing/payment records, including remittance advices and claims for services provided;

(e)     records showing their employees' knowledge of the proper procedures for submitting Medicare and insurance claims, such as documentation and/or information relating to licenses, accreditations, training, and records relating to seminars attended, such as certificates of attendance/completion, agendas, course schedules, and training materials;

(f)     records establishing days worked by particular employees, patients treated by particular employees, and tasks completed by particularly employees, including employee rosters, time cards, other records showing dates and times worked and/or assignments performed, payroll information, W-2s, 1099s, appointment books, calendars, diaries, patient logs, and contracts between the provider and doctors, nurses, physical therapists, consultants, and/or other individuals; and

(g)     documents relating to their finances, including payments received from Medicare and insurance companies, such as bank account records, money market account records, loan records, credit card statements, accounting records, balance sheets, profit and loss statements, accounts receivable and accounts payable ledgers, sales journals, and tax returns.

## Premises to be Searched

54.     Attachments A and B to this affidavit are descriptions of the two locations to be searched, specifically, DEHAAN's residence and his business office. Descriptions of the buildings have been provided by agents, who have conducted

surveillance at each building on different occasions within the past month, most recently in January 2014.

55.     124 North Water Street, Suite 208, Rockford, Illinois:  Based on agents' observations of the exterior of the building and the interior areas visible through the glass front door, this property consists of a three-story brown and black brick building with multiple tenants.  Suite 208 is on the second floor with a sign next to the door that says, "Housecalls of Rockford."  A glass door with glass windows allows access.  There is a parking lot in the rear of the building.

56.     1635 Hidden Creek Lane, Belvidere, Illinois:  Based on agents' observation of the premises is a three story residence, with a front brick-façade light brown in color, with siding on the three other sides on a wooded lot.

## Conclusion

57.     Based on the facts set forth above, there is probable cause to believe that the offense of health care fraud has been committed, and that evidence, instrumentalities, and fruits relating to this criminal conduct, as further described in Attachment C, will be found in each Subject Premises, as further described in Attachments A and B.

58.     I therefore respectfully request that this Court issue a search warrant for each of the Subject Premises, more particularly described in Attachments A and B, authorizing the seizure of the items described in Attachment C.

22

59.     In addition, based on the facts set forth above, there is probable cause that defendant CHARLES DEHAAN did knowingly and willfully participate in a scheme to defraud a health care benefit program, namely, Medicare, and to obtain money owned by and under the custody and control of Medicare by means of false and fraudulent pretenses, representations, and promises, in connection with the delivery of and payment for health care benefits, items, and services, and, on or about December 11, 2013, did execute the scheme by knowingly and willfully submitting and causing to be submitted a false claim, specifically, that he provided services to L.S. at the highest level of care, using CPT code 99350, all in violation of Title 18, United States Code, Section 1347.


CHRISTY WELLS
Special Agent
U.S. Department of Health
  and Human Services
Office of Inspector General


Subscribed and sworn to before me
this 24th day of January, 2014.


IAIN D. JOHNSTON
United States Magistrate Judge
Northern District of Illinois

23