STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE 17th JUDICIAL CIRCUIT
COUNTY OF WINNEBAGO

**FILED**
Date 9.29.10

*Clerk of the Circuit Court*
By
Winnebago County, IL Deputy

JOHN R ANDERSON, as Trustee of the )
JOHN R ANDERSON Revocable Trust )
u/a/d 9/21/77, )
)
      Plaintiff, )   Case No 10 L 341
)
      vs )
)
HOUSE CALLS OF GREATER CHICAGO, )
S C . d/b/a MD@Home and CHARLES S )
DEHAAN, )
      . )
      Defendants )

## COMPLAINT

Plaintiff, John R Anderson, as Trustee of the John R Anderson Revocable Trust

u/a/d 9/21/77 ( John' ), by his attorneys, WilliamsMcCarthy LLP, for his Complaint against House

Calls of Greater C hicago, S C , d/b/a MD@Home ("MD@Home") and Charles S DeHaan

(' DeHaan ) states as follows

### PARTIES, JURISDICTION AND VENUE

1     John is a resident of Winnebago County, Illinois

2     MD@Home is an Illinois corporation with its principal place of residence in

Winnebago County, Illinois DeHaan is a resident of Boone County, Illinois

3     On information and belief, at all relevant times DeHaan was president,

secretary and principal shareholder of MD@Home

4     Jurisdiction is proper in Illinois because the events giving rise to this action

took place in Illinois



GOVERNMENT EXHIBIT K

5      Venue is proper in Winnebago County because the events giving rise to this action took place in Winnebago County, Illinois

## FACTUAL ALLEGATIONS

6      On or about December 19, 2005, MD@Home borrowed $75,000 00 from John for business purposes  The loan is evidenced by a promissory note ("Note #1") dated December 19, 2005, and signed by DeHaan, a true and accurate copy of which is attached hereto, and made a part hereof, as **Exhibit 1**  By its terms, Note #1 became due on February 17, 2006

7      On or about April 13, 2006, MD@Home borrowed $125,000 00 from John for business purposes  This loan is evidenced by a promissory note ("Note #2") dated April 13, 2006,  signed by DeHaan, a true and correct copy of which is attached hereto, and made a part hereof, as **Exhibit 2**  By its terms, Note #2 became due on July 13, 2006

8      In April and May of 2006, John, and his representatives, had negotiations with  DeHaan about rolling over the principal and accrued interest on Note #1 and Note #2 into a $600,000 line of credit  The line of credit was agreed to by John and MD@Home and formalized in June 2006, in the form of the following documents  1) line of credit note ("Line of Credit Note") attached hereto, and made a part hereof, as **Exhibit 3**, 2) a loan agreement ("Loan Agreement") attached hereto, and made a part hereof, as **Exhibit 4**,  and,  a security agreement ("Security Agreement ') attached hereto, and made a part hereof, as **Exhibit 5**, collectively referred to as ( 'Line of Credit Documents")

9      DeHaan agreed to the terms of the Line of Credit Agreement on behalf of MD@Home on or about June 30, 2006, and at that time the borrowings evidenced by Note #1 and Note #2, with accrued interest, and all future advances, became subject to the terms of the Line of

Credit Documents  By it terms, all sums due under the Line of Credit Documents accrued interest at the rate of 20% per annum and became due and payable on or about, June 30, 2008  the first anniversary of the Line of Credit Note

10     On or about July 1 2, 2006, John advanced MD@Home an additional $250,000 00, pursuant to the terms of the Line of Credit Documents   A true and correct copy of the check evidencing such loan is attached hereto, and made a part hereof, as **Exhibit 6**

11     On or about September 27, 2006, John advanced MD@Home an additional $100,000 00, pursuant to the terms of the Line of Credit Documents   A true and correct copy of the check evidencing such loan is attached hereto, and made a part hereof, as **Exhibit 7**

12   On or about November 16, 2006, John advanced MD@Home an additional $60,000 00, pursuant to the terms of the Line of Credit Arrangement Documents   A true and correct copy of the check evidencing such loan is attached hereto, and made a part hereof, as **Exhibit 8**

13     MD@Home has failed to make any principal or interest payments on any of the loans and advances extended by John to it, the Line of Credit Note is in default and there is presently due a principal balance of $610,000 00 plus accrued interest of $779,287 62 through September 1, 2010

14     Despite repeated demands for payment, MD@Home and DeHaan have not cured the defaults

### COUNT I - Breach of Line of Credit Note - MD@Home

15     John restates, realleges and incorporates by reference paragraphs 1 through 14 of this Complaint as if they were fully set forth herein

16     The Line of Credit Documents constitute a valid agreement pursuant to which

MD@Home was obligated to make quarterly interest payments, with all principal and unpaid accrued interest due on or before the first anniversary of the Line of Credit Note

17      MD@Home has failed and refused, and continues to fail and refuse, to make the required payments due under the Line of Credit Documents and is therefore in material breach of the Line of Credit Documents

18      After accounting for all principal, interest, the balance due under the Line of Credit Documents, as of September 1, 2010, is $1,389,287 62

19      John has performed all conditions precedent on his part to be performed

Wherefore, John R Anderson, as Trustee of the John R Anderson Revocable Trust u/a/d 9/21/77, respectfully requests that this Court enter judgment in his favor and against Defendant, Charles S DeHaan in the amount of 1,389,287 62, accrued interest, costs of suit and attorneys fees

### COUNT II - Breach of Line of Credit Note - DeHaan

20      John restates, realleges and incorporates by reference paragraphs 1 through 19 of this Complaint as if they were fully set forth herein

21      On information and belief, DeHaan has misused the corporate form of MD@Home and has failed to follow the corporate formalities required by the Illinois Business Corporation Act and the Illinois Medical Corporation Act

22      On information and belief, DeHaan, in his official capacity as an officer, director and shareholder of MD@Home has failed to properly capitalize MD@Home in order to satisfy its obligations and debts

23      On information and belief, DeHaan, in his official capacity as an officer, director and shareholder of MD@Home, has co-mingled funds and diverted assets from the

corporation to other persons and entities to the detriment of creditors

24    On information and belief, MD@Home is insolvent

25    On information and belief, DeHaan, through MD@Home, has perpetrated a fraud or injustice on John

26    At all relevant times during his dealings with John, DeHaan was the alter-ego of MD@Home because there was a unity of interest and ownership such that the separate personalities of MD@Home and DeHaan no longer existed

27    As a result, the corporate veil of MD@Home should be pierced as it is the alter-ego or business conduit of DeHaan and liability should be imposed upon DeHaan personally

Wherefore  John R Anderson, as Trustee of the John R  Anderson Revocable Trust u/a/d 9/21/77, respectfully requests that this Court enter judgment in his favor and against Defendant, Charles S  DeHaan, in the amount of $1,389,287 62 plus, accrued interest, costs of suit and attorneys fees

> JOHN R  ANDERSON, as Trustee of the JOHN R  ANDERSON Revocable Trust U/A/D 9/21/77, Plaintiff,
> By his attorneys, WILLIAMSMCCARTHY LLP
>
> By _____
>
> Scott C  Sullivan

Scott C  Sullivan (#55)
WILLIAMSMCCARTHY, LLP
120 West State Street  Suite 400
P O  Box 219
Rockford  IL 61105-0219
Phone   815/987-8900

## PROMISSORY NOTE

$ 75,000        Rockford, Illinois        DECEMBER 19, 2005

FOR VALUE RECEIVED, MD AT HOME, 7479 Walton Drive, Suite 4, Rockford, Illinois 61108 ("Maker") promises to pay to the order of JOHN R ANDERSON ("Holder") at his offices at 330 Spring Creek Road, Rockford, IL 61107 or at such other place as the holder of this Note may designate in writing to the Maker, on February 17,2006, the principal sum of SEVENTY FIVE THOUSAND and 00/100 Dollars ($75,000), together with interest thereon at the rate of the prime or base rate as published from time to time in the Money Rate Section of the Wall Street Journal, Midwest Edition as adjusted from time to time

No clause or provision contained in this Note or any documents related hereto shall be construed or shall so operate (a) to raise the interest rate set forth in this Note above the lawful maximum, if any, in effect from time to time in the applicable jurisdiction for loans to borrowers of the type, in the amount, for the purposes, and otherwise of the kind contemplated, or (b) to require the payment or the doing of any act contrary to law, but if any clause or provision contained shall otherwise so operate to invalidate this Note, in whole or in part, then (i) such clauses or provisions shall be deemed modified to the extent necessary to be in compliance with the law, or (ii) to the extent not possible, shall be deemed void as though not contained and the remainder of this Note and such document shall remain operative and in full force and effect.

All makers and any endorsers, guarantors, sureties, accommodation parties and all other persons liable or to become liable for all or any part of this indebtedness, jointly and severally waive diligence, presentment, protest and demand, and also notice of protest, of demand, of nonpayment, of dishonor and of maturity and also recourse or suretyship defenses generally; and they also jointly and severally hereby consent to any and all renewals, extensions or modifications of the terms of this Note, including time for payment, and further agree that any such renewals, extension or modification of the terms of this Note or the release or substitution of any security for the indebtedness under this Note or any other indulgences shall not affect the liability of any of the parties for the indebtedness evidenced by this Note. Any such renewals, extensions or modifications may be made without notice to any of said parties

The Maker shall be liable to the Holder for all costs and expenses incurred in connection with collection, whether by suit or otherwise, of any amount due under this Note, including, without limitation, attorneys' fees

This Note shall be governed by and construed in accordance with the laws of the State of Illinois

MD AT HOME

By: _Chale SPel_

Name: _Cuthces S Deatts_

Title _Pred. Dir_

Complaint - Exhibit 1

## PROMISSORY NOTE

$ 125,000                                   Rockford, Illinois                                   APRIL 13, 2006

FOR VALUE RECEIVED, MD AT HOME, 7479 Walton Drive, Suite 4, Rockford, Illinois 61108 ("Maker") promises to pay to the order of JOHN R ANDERSON ("Holder") at his offices at 330 Spring Creek Road, Rockford, IL 61107 or at such other place as the holder of this Note may designate in writing to the Maker, on July 13,2006, the principal sum of ONE HUNDRED TWENTY FIVE THOUSAND and 00/100 Dollars ($125,000), together with interest thereon at the rate of the prime or base rate as published from time to time in the Money Rate Section of the Wall Street Journal, Midwest Edition as adjusted from time to time

No clause or provision contained in this Note or any documents related hereto shall be construed or shall so operate (a) to raise the interest rate set forth in this Note above the lawful maximum, if any, in effect from time to time in the applicable jurisdiction for loans to borrowers of the type, in the amount, for the purposes, and otherwise of the kind contemplated, or (b) to require the payment or the doing of any act contrary to law, but if any clause or provision contained shall otherwise so operate to invalidate this Note , in whole or in part, then (i) such clauses or provisions shall be deemed modified to the extent necessary to be in compliance with the law, or (ii) to the extent not possible, shall be deemed void as though not contained and the remainder of this Note and such document shall remain operative and in full force and effect

All makers and any endorsers, guarantors, sureties, accommodation parties and all other persons liable or to become liable for all or any part of this indebtedness, jointly and severally waive diligence, presentment, protest and demand, and also notice of protest, of demand, of nonpayment, of dishonor and of maturity and also recourse or suretyship defenses generally; and they also jointly and severally hereby consent to any and all renewals, extensions or modifications of the terms of this Note, including time for payment, and further agree that any such renewals, extension or modification of the terms of this Note or the release or substitution of any security for the indebtedness under this Note or any other indulgences shall not affect the liability of any of the parties for the indebtedness evidenced by this Note  Any such renewals, extensions or modifications may be made without notice to any of said parties

The Maker shall be liable to the Holder for all costs and expenses incurred in connection with collection, whether by suit or otherwise, of any amount due under this Note, including, without limitation, attorneys' fees

This Note shall be governed by and construed in accordance with the laws of the State of Illinois

MD AT HOME

By _Charles S Deb_

Name _Charles Dean_

Title _Presiden_

4/12/2006

Complaint - Exhibit 2

## LINE OF CREDIT NOTE

$600,000                        Rockford, Illinois                    _____, 2006

      FOR VALUE RECEIVED, HOUSE CALLS OF GREATER CHICAGO, S C , d/b/a MD@Home ("MD@Home") promises to pay to the order of JOHN R ANDERSON ("John"), as Trustee of the John R Anderson Revocable Trust u/a/d 9/21/77, 330 Spring Creek Road, Rockford, Illinois, or at such other place as John may designate in writing to MD@Home, on or before the first anniversary of this note, the principal sum of Six Hundred Thousand Dollars ($600,000), or, if less, the aggregate amount of the Line of Credit Loans advanced and unpaid pursuant to a certain Loan and Security Agreement made by and between MD@Home and John of even date herewith as the same may be amended from time to time (the "Loan Agreement"), the terms of which are incorporated by reference and made a part of this Note as though fully set out herein  Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Loan Agreement  The amount advanced and outstanding under the Loan Agreement as shown on John's books and records shall be considered correct and conclusively binding on MD@Home absent manifest error

      MD@Home further promises to pay interest on the Line of Credit Loans as provided in the Loan Agreement

      All payments received from MD@Home hereunder shall be applied by John in accordance with the terms of the Loan Agreement

      This Note is issued under the Loan Agreement and this Note and John are entitled to all of the benefits provided for by the Loan Agreement or referred to therein, to which Loan Agreement reference is made for a statement thereof  Pre-payments may be made at any time without penalty

      No clause or provision contained in this Note or any documents related hereto shall be construed or shall so operate (a) to raise the interest rate set forth in this Note above the lawful maximum, if any, in effect from time to time in the applicable jurisdiction for loans to borrowers of the type, in the amount, for the purposes, and otherwise of the kind contemplated, or (b) to require the payment or the doing of any act contrary to law, but if any clause or provision contained shall otherwise so operate to invalidate this Note, in whole or in part, then (i) such clauses or provisions shall be deemed modified to the extent necessary to be in compliance with the law, or (ii) to the extent not possible, shall be deemed void as though not contained and the remainder of this Note and such document shall remain operative and in full force and effect

      This Note shall be governed by and construed in accordance with the laws of the State of Illinois

                              HOUSE CALLS OF GREATER CHICAGO, S C ,
                              d/b/a MD@Home

                              By  _____
                                        Charles S DeHaan
                                        Its President

anderson\md@home\note 2

-1-

Complaint - Exhibit 3

## LOAN AGREEMENT

THIS LOAN AGREEMENT is entered into by and between HOUSE CALLS OF GREATER CHICAGO, S C , d/b/a MD@Home ("MD@Home"), and JOHN R ANDERSON ("John"), Trustee of the John Anderson Revocable Trust u/a/d 9/21/77  In consideration of the mutual covenants set forth herein, the parties hereto agree as follows

### ARTICLE I. DEFINITIONS.

1 01    The following words and phrases, as used herein, shall have the following respective meanings

"Business Day" shall mean any day on which commercial banks are open for domestic business in Rockford, Illinois

"Change in Control" of MD@Home shall be deemed to have occurred as of the first day any one or more of the following paragraphs shall have been satisfied

(A)    Any person (other than Charles S DeHaan), becomes the beneficial owner, directly or indirectly, of securities of MD@Home representing more than 50% of the combined voting power of MD@Home's then outstanding securities, or

(B)    Representatives of MD@Home consummate a public offering of any securities issued by MD@Home, or

(C)    During any period of two (2) consecutive years, the stockholders of MD@Home approve (A) a plan of complete liquidation of the Company, or (B) an agreement for the sale  of disposition of all or substantially all  MD@Home's assets, or (C) a merger, consolidation, or reorganization of the Company with or involving any other corporation, other than a merger, consolidation, or reorganization that would result in the voting securities of the Company outstanding immediately prior thereto continuing to represent (either by remaining outstanding or by being converted into voting securities of the surviving entity), at least 50% of the combined voting power of the voting securities of  MD@Home (or such surviving entity)  outstanding immediately after such merger,  consolidation, or reorganization

"Closing" shall have the meaning specified in Section 3 01

"Documents" shall mean this Agreement, the Note, and any other documents, instruments or certificates to be executed and delivered hereunder or in connection herewith by or on behalf of MD@Home

"Event of Default" shall have the meaning specified in Section 4 01

anderson\md@home\loan 1

-1-

"Interest Rate" shall mean 20 0% per annum

"Line of Credit Loan" shall have the meaning specified in Section 2 01(A)

"Line of Credit Loan Commitment" shall have the meaning specified in Section 2 01(A)

"Line of Credit Loan Termination Date" shall have the meaning specified in section 2 01(A)

"Line of Credit Note" shall have the meaning specified in Section 2 01(D)

"Loans" shall mean the Line of Credit Loan

"Note" shall mean the Line of Credit Note

"Qualifying Capital Expenditures" shall mean refunding of the two existing loans of $75,000 each plus interest which John has made to or for the benefit of MD@Home, reimbursement to John of his legal fees and expenses as identified in Section 5 13 incurred in establishing this credit facility, funding of capital expenditures by MD@Home during 2005 and 2006, and such other amounts within the annual business plan of MD@Home as previously approved by John as to either amount or formula

## ARTICLE II. THE LOAN, FEE, AND AGREEMENT TO PLEDGE.

2 01    (A) Subject to the terms and conditions of this Agreement, John shall make a Line of Credit Facility (the "Line of Credit Loan Commitment") available to MD@Home, pursuant to which John may from time to time make Line of Credit advances (each, a "Line of Credit Loan") to MD@Home  The aggregate amount of advances outstanding under the Line of Credit Loan Commitment shall at no time exceed Six Hundred Thousand Dollars ($600,000)  The Line of Credit Loan Commitment shall terminate on the first anniversary of this Agreement (the "Line of Credit Loan Termination Date") unless sooner terminated in accordance with the provisions of this Agreement

(B) The proceeds of Line of Credit Loans shall be disbursed directly to MD@Home pursuant to MD@Home's written instructions to John  Line of Credit Loans may be used by MD@Home only for Qualifying Capital Expenditures

(C) All outstanding Line of Credit Loans together with any accrued but unpaid interest thereon shall be repaid in full on the Line of Credit Loan Termination Date  MD@Home may repay but not reborrow under the Line of Credit Loan Commitment subject to the terms and conditions of this Agreement

(D) The Line of Credit Loans shall be evidenced by a note in the form of

Exhibit 2 01(D) hereto (the "Line of Credit Note")

(E) The Line of Credit Loans shall bear interest at the Interest Rate   Interest shall be calculated on the basis of a 365-day year, counting actual number of days elapsed, and shall be paid quarterly in arrears commencing on the end of the first regular calendar quarter after the date of this Agreement and continuing on each calendar quarter thereafter

2 02   Any obligation of MD@Home pursuant to this Agreement which is not paid when due, shall be added to the principal balance of the Line of Credit Loans

2 03   If, at any time, the interest rate and other charges imposed hereunder shall be deemed by any competent governmental authority to exceed the maximum rate of interest permitted by any applicable laws, for such time as the interest and such charges would be deemed excessive, its application shall be suspended and there shall be charged instead the maximum rate of interest and charges permissible under such laws

2 04   All payments received from MD@Home which are not prepayments shall be applied 1) first to expenses incurred by John as provided in Section 5 13 of this Agreement, 2) then to any interest due under any Line of Credit Loan, and 3) finally to reduction of principal outstanding on any Line of Credit Loan

2 05   All payments received from MD@Home hereunder shall be paid directly to John without setoff or counterclaim in immediately available funds   John shall send MD@Home statements of all amounts due hereunder, which statements shall be considered correct and conclusively binding on MD@Home's absent manifest error

2 06   MD@Home hereby agrees to pledge as security for any Revolving Credit Loan outstanding, a security interest in all of the assets of MD@Home pursuant to the form of Security Agreement attached hereto as Exhibit 2 06 and incorporated herein by reference

2 07   If not sooner terminated by passage of time, the Line of Credit Loan Termination Date shall be 60 days after termination of Charles S DeHaan's employment relationship with MD@Home or any of its affiliates

## ARTICLE III. CONDITIONS PRECEDENT

The obligation of John to make the Loans is subject to the following conditions precedent

3 01   that MD@Home shall have delivered or caused to be delivered to John on the date of, but prior to, the making of the Loans (hereinafter called the "Closing"), the following

(A) The Line of Credit Note, duly executed by MD@Home



(B)  The Security Agreement, duly executed by MD@Home

(C)  Such other documents, certificates or evidence as John may request to consummate the transactions contemplated hereby

## ARTICLE IV.  EVENTS OF DEFAULT

4 01     The occurrence of any of the following events or acts shall constitute an Event of Default ("Event of Default")

(i)      MD@Home files a petition under any section or chapter of the United States Bankruptcy Code or any similar federal or state law or regulation, MD@Home admits his inability to pay debts as they mature, MD@Home makes an assignment for the benefit of one or more of their creditors, MD@Home makes an application for the appointment of a receiver, or MD@Home files any case or proceeding for relief from creditors

(ii)     A petition under any section or chapter of the United States Bankruptcy Code or any similar federal or state law or regulation is filed against MD@Home, or an application is made by any Person other than MD@Home for the appointment of a receiver, trustee, or custodian for MD@Home's assets, and such injunction, restraint, petition or application is not dismissed or stayed within thirty (30) days after the entry or filing thereof

(iii)    MD@Home permits any of its assets to be attached, seized, subjected to a writ or distress warrant, or levied upon, or to come within the possession of any receiver, trustee, custodian or assignee for the benefit of creditors and does not cause the same to be terminated within thirty (30) days thereafter

(iv)    Charles S DeHaan ceases to be an active employee and a Change in Control of MD@Home occurs

4 02     Upon the occurrence of any Event of Default, and at any and all times while any Event of Default shall be continuing, John shall have all rights and remedies provided by this Agreement or any other Document and by applicable law and, without limiting the generality of the foregoing, may, at its option, declare the Line of Credit Loan Commitment terminated as of the date of such notice

4 03     For the purposes of any action or proceeding involving the Documents or any other agreement or document referred to therein, MD@Home hereby expressly submits to the jurisdiction of all federal and state courts located in the State of Illinois and consents that any order, process, notice of motion or other application to or by any of said courts or a judge thereof may be served within or without such court's jurisdiction by registered mail or by personal service, provided

a reasonable time for appearance is allowed MD@Home hereby irrevocably waives any objection that it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement or any other Document brought in any federal or state court sitting in Winnebago County, State of Illinois, and hereby further irrevocably waives any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum

4 04   MD@HOME   HEREBY   KNOWINGLY,   VOLUNTARILY   AND INTENTIONALLY WAIVES (TO THE EXTENT PERMITTED BY APPLICABLE LAW) ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATING TO THIS AGREEMENT, THE NOTES, ANY OTHER OF THE DOCUMENTS OR ANY OTHER AGREEMENT OR DOCUMENT REFERRED TO HEREIN OR THEREIN AND AGREES THAT ANY SUCH DISPUTE SHALL BE TRIED BEFORE A JUDGE SITTING WITHOUT A JURY

### ARTICLE V. MISCELLANEOUS

5 01   No failure or delay on the part of John in exercising any right, power or remedy hereunder or under any other Documents shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power or remedy preclude any other or further exercise thereof or the exercise of any other right, power or remedy hereunder or under any other Document The remedies herein provided and under any other Document are cumulative and not exclusive of any remedies provided by law

5 02   This Agreement and the other Documents constitute the entire agreement between the parties and there are no promises expressed or implied unless contained herein and therein No amendment, modification, termination or waiver of any provision of the Documents nor consent to any departure by MD@Home therefrom shall in any event be effective unless the same shall be in writing and signed by John, and then such waiver or consent shall be effective only for the specific purpose for which given No notice to or demand on MD@Home in any case shall entitle MD@Home to any other or further notice or demand in similar or other circumstances

5 03   For the purposes of any action or proceeding involving the Documents or any other agreement or document referred to therein, MD@Home hereby expressly submits to the jurisdiction of all federal and state courts located in the State of Illinois and consents that any order, process, notice of motion or other application to or by any of said courts or a judge thereof may be served within or without such court's jurisdiction by registered mail or by personal service, provided a reasonable time for appearance is allowed MD@Home hereby irrevocably waives any objection that he may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement or any other Document brought in any federal or state court sitting in Winnebago County, State of Illinois, and hereby further irrevocably waives any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum

5 04   Any notices or consents required or permitted by this Agreement shall be in writing and shall be delivered in person or sent by certified mail, postage prepaid, return receipt

requested, or delivered by, facsimile, telegram or telex, or delivered by a nationally recognized overnight express delivery service, addressed as follows, unless such address is changed by written notice hereunder

(i)     If to MD@Home

Charles S DeHaan
1635 Hidden Creek Lane
Belvidere, IL 61008

(ii)    If to John

John R Anderson
330 Spring Creek Road
Rockford, Illinois  61107-1035

Any such notice or communication shall be deemed to have been given either at the time of personal delivery, or in the case of overnight express delivery, as of the date delivery was first attempted, or in the case of facsimile, telegram or telex, upon receipt or in the case of certified mail, five (5) days after delivery to the United States Postal Service

5 05     This Agreement may be executed in any number of counterparts and by the different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument

5 06     This Agreement shall become effective when it shall have been executed by MD@Home and John, and thereafter shall be binding upon and inure to the benefit of MD@Home and John and their respective successors and assigns, except that MD@Home shall not have the right to assign his rights hereunder or any interest herein without the prior written consent of John

5 07     This Agreement has been, and any other Documents will be, delivered and accepted in and shall be deemed to be, contracts made under and governed by the laws of the State of Illinois, and for all purposes shall be construed in accordance with the laws of said State

5 08     Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provision in any other jurisdiction, wherever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law

5 09     This Agreement shall secure and govern the terms of any extensions or renewals to the Notes



       5 10    From time to time, MD@Home will execute and deliver to John such additional documents and will provide such additional information as John may reasonably require to carry out the terms of this Agreement and be informed of MD@Home's status and affairs

       5 11    All Exhibits attached to this Agreement shall be deemed incorporated herein by this reference

       5 12    Whenever under the terms of this Agreement, the time for performance of a covenant or condition falls upon a Saturday, Sunday or legal holiday of the United States Government, such time for performance shall be extended to the next Business Day   Unless otherwise stated, all references herein to "days" shall mean calendar days

       5 13    MD@Home will reimburse John for all expenses, including the fees and expenses of legal counsel (including, without limitation, legal assistants) for John, incurred by John in connection with this transaction, any amendment or modification of the Documents and/or in connection with the enforcement of the Documents and the collection or attempted collection of the Notes MD@Home will further, on demand, reimburse John for all of the fees and expenses of legal counsel for John incurred by John in connection with the preparation of the Documents, the negotiation and closing of the transactions contemplated hereby, and the administration of the Loans MD@Home will pay all wire transfer fees incurred by John in connection with the wire transfer of funds made by or on behalf of John for purposes of making funds available as an advance to MD@Home or any wire transfer of funds in the form of repayments by MD@Home in order to complete a wire transfer of funds to John's designated depository

       IN WITNESS WHEREOF, the parties have hereunto caused this Agreement to be executed by their respective officers thereunto duly authorized, as of the date first above written

                  HOUSE CALLS OF GREATER CHICAGO, S C ,
                  d/b/a MD@Home

                  By _____

                        Charles S DeHaan
                        Its President

                  _____

                  John R Anderson, Trustee of the John Anderson
                  Revocable Trust u/a/d 9/21/77

## SECURITY AGREEMENT

1    Grant of Security   HOUSE CALLS OF GREATER CHICAGO, S C , d/b/a MD@Home, an Illinois professional service corporation, of 1635 Hidden Creek Lane, Belvidere, IL 61008 (hereinafter referred to as "Debtor"), for valuable consideration, receipt of which is acknowledged, grants to JOHN R ANDERSON, as Trustee of the John R Anderson Revocable Trust u/a/d 9/21/77, 330 Spring Creek Road, Rockford, Illinois, (hereinafter referred to as "Secured Party"), a security interest in and mortgages to Secured Party the following

> All inventory, accounts(other than accounts arising from services payable by Medicare), chattel paper, instruments, fixtures, furniture, equipment, supplies, stock in trade, motor vehicles, name, telephone number and goodwill of the Debtor or in which the Debtor has an interest, whether now owned or hereafter acquired wherever located, and all substitutions for, accessions to, proceeds of, and products of the foregoing

2    Obligations Secured   This security interest is hereby given to secure payment of the following obligations of Debtor to Secured Party (hereinafter referred to as "Obligations")

2 1    The obligations of Debtor to Secured Party arising under the Line of Credit Note dated _____, 2006 in the original amount of $600,000

3    Debtor's warranties and covenants   Debtor warrants and covenants that the collateral is used solely for business use and that

3 1    The collateral is located at Debtor's business principal place of business at 1635 Hidden Creek Lane, Belvidere, IL 61008

3 2    The collateral will be kept at said principal place of business and Debtor shall promptly notify Secured Party of any change in location of the collateral within the State of Illinois, and Debtor shall not remove the collateral from the State of Illinois without the prior written consent of Security Party

3 3    Debtor will have and maintain insurance at all times with respect to all collateral against risks of loss or damage by fire, theft and such other casualties as Secured Party may reasonably require

3 4    Debtor will pay promptly, when due, all taxes and assessments upon the collateral or for its use or operation or upon this agreement or upon any note or notes evidenced in the Obligations

3 5    Debtor agrees to promptly notify Secured Party of any notice of default received from the Senior Creditor

3 6    Debtor agrees and hereby covenants to the Secured Party observance of all the following covenants

3 6 1    To refrain from paying Charles S DeHaan a base salary in excess of his 2005 base salary, but with the amount of base salary limit increased each year by three percent (3%)

Complaint - Exhibit 5

3 6 2  Declare or pay any dividends, or redeem or repurchase any of, or make any other payment or distribution on account of, any stock, provided, however, that for so long as Debtor maintains its status as a Subchapter S corporation under the Internal Revenue Code, Debtor may make distributions to its shareholders in the amounts of Illinois and federal income tax payments (including estimated payments) to the extent then due and attributable to income of MD@Home, determined using the highest Illinois and federal income tax rates applicable to any shareholder of Debtor, provided that at the time each such distribution is made there then exists no Event of Default and there then exists no event or condition which, with the passage of time or giving of notice or both, would constitute an Event of Default

3 6 3  Debtor shall not become a party to or be bound by any contracts, written or oral, under which material consideration has been or will be required from Debtor without the receipt by Debtor of consideration which is of commensurate value, or in which the any Shareholder of Debtor or any of their affiliates or associates, or any director, officer or employee of Debtor, has any direct or indirect beneficial or other interest in any capacity  Debtor agrees to refrain from entering into any contract which requires or permits Debtor to prepay for services covering a period ending more than one year from the date of payment

3 6 4  Maintain its corporate existence, maintain all rights, privileges, franchises, permits and approvals necessary or desirable for the continuation of its business, and comply with the requirements of all material agreements to which it is a party or by which any of its assets is bound, and all applicable laws, including environmental laws, and orders of any governmental authority, noncompliance with which would materially adversely affect its business, properties, condition, financial or otherwise, or ability to repay its obligations

3 6 5  Debtor shall, at its sole cost and expense, keep and maintain the Collateral insured for the greater of the full insurable value or the full replacement value thereof against loss or damage by fire, theft, explosions, sprinklers and all other hazards and risks (i) covered by extended coverage and/or (ii) ordinarily insured against by other owners or users of properties in similar businesses  All such policies of insurance shall be in form, with insurers and in such amounts as may be satisfactory to John  Debtor shall deliver to John a certificate of insurance with respect to each policy of insurance and evidence of payment of all premiums for each such policy  Such policies of insurance shall contain a lender's loss payable endorsement, in form and substance acceptable to John, showing loss payable to John  Such endorsement or an independent instrument furnished to John shall provide that all insurance companies shall give John at least thirty (30) days prior written notice before any such policy or policies of insurance shall be altered or cancelled and that no act or default of Debtor or any other Person shall affect the right of John to recover under such policy or policies of insurance in case of loss or damage  Debtor hereby directs all insurers under such policies of insurance to pay all proceeds payable thereunder directly to John  With respect to all claims in excess of $60,000, and with respect to all claims of any size at any time during the existence of an Event of Default, Debtor irrevocably appoints John and all officers, employees or agents designated by John as Debtor's true and lawful attorney and agent in fact for the purpose of making, settling and adjusting claims under such policies of insurance, endorsing the name of Debtor on any check, draft, instrument or other item of payment for the proceeds of such policies of insurance and for making all determinations and decisions with respect to such policies of insurance  If Debtor at any time or times hereafter shall fail to obtain or maintain any of the policies of insurance required above, or to pay any premium in whole or in part relating thereto, John, without waiving or releasing any of the obligations of Debtor or any Event of Default, may at any time or times thereafter, but shall be under no obligation to do so, obtain and maintain such policies of insurance and pay such premiums and take any other action with respect thereto which John deems necessary or advisable  All sums so disbursed by John, including attorney's fees, court costs, expenses and other charges relating thereto, shall be part of the Obligations, payable by Debtor to John on demand

3 6 6  Maintain, in addition to the insurance on Collateral required pursuant to this Agreement, (i) liability insurance in form, with insurers and in amounts as may be satisfactory to John, showing John as an additional insured, and (ii) fidelity bonds and such other insurance in form, with insurers and in amounts as may be satisfactory to John

3 6 7  Promptly pay and discharge when due all taxes, assessments and other governmental charges imposed upon it, or upon its income, profits or property, and all claims for labor, material or supplies which, if unpaid, might by law become a lien or charge upon its property, provided, however, that it shall not be required to pay any tax, assessment, charge or claim if so permitted by law, so long as the validity thereof shall be contested in good faith by appropriate proceedings and adequate reserves therefor in accordance with GAAP shall be maintained on its books

3 6 8  Debtor shall keep and maintain the equipment in good operating condition and repair and shall make all necessary replacements thereof and renewals thereto so that the value and operating efficiency thereof shall at all times be maintained and preserved, provided, however, that Debtor may sell obsolete equipment for a price which reasonably approximates its fair market value if the proceeds thereof (to the extent that they exceed $60,000 per year in the aggregate) are paid directly to John

3 6 9  Debtor shall, immediately on demand by John, deliver to John any and all evidence of ownership of any equipment, including any certificates of title and/or applications for title thereto  Debtor shall notify John within 20 days after Debtor acquires any vehicles or other property covered by a certificate of title and shall deliver to John, simultaneous with such notice  certificates of title relating to such vehicles or other property and appropriate financing statements, if required by applicable law, duly completed by Debtor, to enable John to perfect its lien in such property

4  Default  Debtor shall be in default under this agreement upon the occurrence of any of the following events or conditions

4 1  Default by Debtor on the payment of its obligations pursuant to the agreements described in Paragraph 3 above

4 2  Dissolution, termination of existence, business failure, appointment of receiver of any part of the property of, assignment for the benefit of creditors by, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Debtor

4 3  Except as otherwise provided herein, upon such default, and upon written notice to Debtor and the failure of the same to be cured within 30 days, and at any time thereafter, (such default not having previously been cured) Secured Party, at its option, may declare all obligations secured hereby immediately due and payable and shall have the remedies of the Secured Party under the Uniform Commercial Code of Illinois, including, without limitation, the right to take immediately and exclusive possession of the collateral, or any part thereof, and for that purpose, may so far as Debtor can give authority therefor, with or without judicial process, enter (if this can be done without breach of the peace), upon any premises which the collateral or any part thereof may be situated and may remove the same therefrom, (provided that if the collateral is affixed to real estate, such removal shall be subject to the conditions stated in the Uniform Commercial Code of Illinois), thence Secured Party shall be entitled to hold, maintain, preserve and prepare the collateral for sale, until disposed of, or may propose to retain the collateral subject to Debtor's obligations as provided in the Uniform Commercial Code of Illinois  Unless the collateral is perishable or threatens to decline speedily in value or is of a type customarily sold in a recognized market, Secured

Party will give Debtor at least fifteen (15) days notice of the time and place of any public sale thereof or of the time after which any private sale or any other intended disposition thereof is to be made Secured Party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market, or if of a type which is the subject of widely distributed standard priced quotations, he may buy at private sale The net proceeds realized upon any such disposition, after deduction for the expenses of retaking, holding, preparing for sale, selling or the like and the reasonable attorney's fees and legal expenses incurred by Secured Party, shall be applied in satisfaction of the obligations hereby secured Secured Party will account to the Debtor for surplus realized on such disposition and the Debtor shall remain liable for any deficiency

     5   Remedies   The remedies of the Secured Party hereunder are cumulative and the exercise of any one or more remedies provided for herein or under the Uniform Commercial Code of Illinois shall not be construed as a waiver of any of the other remedies of the Secured Party so long as any part of the Debtor's obligations remained unsatisfied

     6   Debtor's rights in collateral   Until default, Debtor may have possession of the collateral and use it in any lawful manner not inconsistent with this agreement and not inconsistent with any policy of insurance thereon

     7   Waiver and Assignment   No waiver by Secured Party of any default shall operate as a waiver of any other default or of the same default on a future occasion All right of Secured Party hereunder shall inure to the benefit of its successors and assigns, and all obligations of Debtor shall bind his heirs, executors or administrators or his or its successors or assigns Notwithstanding the foregoing, this Security Agreement shall not be assignable by either party except only upon the written consent of the other party, which consent shall not be unreasonably withheld

     8   General

       8 1   This agreement shall become effective when it is signed by Debtor
       8 2   The terms and provisions contained herein shall, unless the context otherwise requires, have the meanings and shall be construed as provided in the Uniform Commercial Code of Illinois

       8 3   Unless the provisions of this agreement require otherwise, words importing the singular in number shall include the plural, and words indicating the plural shall include the singular

     Dated at Rockford, Illinois as of the ___ day of _____, 2006

     DEBTOR

     HOUSE CALLS OF GREATER CHICAGO, S C , d/b/a MD@Home

     By _____
          Charles S DeHaan
          Its President

     _____
     John R Anderson, as Trustee of the John R Anderson Revocable Trust u/a/d 9/21/77

JOHN R. ANDERSON
330 SPRING CREEK ROAD
ROCKFORD, IL 61107

AMCORE BANK NA, ROCKFORD
ROCKFORD, IL 61104
70-45/719

09814

7/12/2006

PAY TO THE
ORDER OF _____ MD @Home

$ **250 000 00

Two Hundred Fifty Thousand Only _____ DOLLARS

MD @Home

⑈009814⑈ ⑆071900456⑆ ⑈8004242⑈ ⑆00250000000⑆

Funds ik por
Amore BB Anderson

Complaint - Exhibit 6



Complaint - Exhibit 7



Complaint - Exhibit 8