UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

UNITED STATES OF AMERICA

v.

CHARLES DEHAAN

No. 14 CR 50005

Judge Frederick J. Kapala

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, ZACHARY T. FARDON, and defendant CHARLES DEHAAN, and his attorney, DEBRA SCHAFER, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The superseding indictment in this case charges defendant with twenty-three counts health care fraud, in violation of Title 18, United States Code, Section 1347.

3. Defendant has read the charges against him contained in the superseding indictment, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charges to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the superseding indictment: Counts Nine and Twenty-One, both of which charge defendant with health care fraud, in violation of Title 18, United States Code, Section 1347.

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charges contained in Counts Nine and Twenty-One of the superseding indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

Beginning no later than in or about January 2009 and continuing through on or about January 24, 2014, in the Northern District of Illinois, Western Division, and elsewhere, defendant did participate in a scheme to defraud a health care benefit program, as defined by Title 18, United States Code, Section 24(b), namely Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money under the custody and control of Medicare in connection with the delivery of and payment for health care benefits and services.

Medicare was a Federal health care benefit program, as defined in Title 18, United States Code, Section 24(b), that provided free and below-cost health care benefits, including, among other things, medically necessary physician visits to patients' homes and in-home health care services for persons who were confined to their homes. Medicare included coverage under two primary components: "Part A,"

which covered a portion of the costs of hospital inpatient stays and home health care; and "Part B," which covered a portion of certain outpatient physician visits and services. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. In Illinois, CMS contracted with different companies to administer and pay Part B claims, including services related to physician home visits, from the Medicare Trust Fund.

During the course of the scheme, defendant was a physician licensed in Illinois. Defendant was issued a Medicare provider number and used his provider number to file claims with Medicare for payment of services purportedly provided to beneficiaries. By becoming a participating provider in Medicare, defendant agreed to abide by the policies and procedures, rules, and regulations governing payment. Between January 2009 and January 24, 2014, defendant primarily billed Medicare for in-home patient visits and certifications for patients defendant deemed homebound.

The American Medical Association established certain codes to identify medical services and procedures performed by physicians known as the Current Procedural Terminology ("CPT"). The CPT system provided a national coding practice for reporting services performed by physicians and for payment of Medicare claims. A physician visit to a patient's home with a new patient was billed using CPT codes 99341 through 99345 while a physician visit to an established patient was billed using CPT codes 99347 through 99350. For each of these series of CPT

3

codes, a higher code number corresponded to a more in-depth and time-consuming level of service, with a correspondingly higher payment amount. Medicare payments for claims submitted using CPT codes 99345 and 99344 (for new patients) and 99349 and 99350 (for established patients) were more than the payments for claims submitted using CPT codes 99341 and 99342 and 99347 and 99348, with the payment for claims submitted using the higher codes approximately three times more than the payment for claims submitted using the lower codes.

Defendant knew that Medicare authorized payment for home visits and physician services only if those services were actually provided and were medically necessary because of disease, infirmity, or impairment. Defendant also knew that Medicare did not authorize payment for services and treatment that were not actually provided or for which that patient did not meet the criteria necessary to justify the claimed service or treatment.

Defendant devised a scheme to bill, and caused to be billed, Medicare for medical services purportedly provided to patients when defendant knew he did not provide any reimbursable medical service. This included defendant billing, and causing to be billed, Medicare at the highest payment levels for routine, non-complex, visits with new and established patients even though defendant knew the visit did not qualify for the highest levels of payment and defendant billing, or causing to billed, Medicare at the highest payment levels for patients for whom defendant did not actually provide medical services or treatment.

For example, on December 17, 2013, at Rockford, Illinois, defendant knowingly and willfully executed the scheme by causing to be submitted to Medicare a claim seeking payment for a sixty-minute in-home visit using CPT code 99344 with patient SJ that allegedly occurred on December 12, 2013. Defendant, however, never saw SJ on December 12, 2013. Defendant acknowledges that the claimed visit did not qualify for billing under CPT code 99344.

Some of the patients defendant billed or caused to be billed at the highest payment levels but did not actually see were deceased on the date of the alleged visit resulting in defendant billing, and causing to be billed, Medicare for a visit after the patient's death. For example, on June 21, 2013, at Rockford, Illinois, defendant knowingly and willfully executed the scheme by causing to be submitted to Medicare a claim seeking payment for a forty-minute in-home visit using CPT code 99349 with patient CH that allegedly occurred on June 12, 2013. CH, however, died on April 28, 2013. Defendant subsequently submitted to Medicare another claim seeking payment for a forty-minute in-home visit using CPT code 99349 with patient CH that allegedly occurred on July 17, 2013. Defendant acknowledges that neither the June 12, 2013, nor the July 17, 2013, claimed visits qualify for billing under CPT code 99349.

Medicare also covered home health care, that is, health care services provided to Medicare beneficiaries suffering from illnesses or disabilities which confined them to their homes. With regard to home health care services, Medicare authorized payment under the following circumstances:

5

(1) the Medicare beneficiary was "homebound," meaning that his or her ability to leave the home was restricted due to illness or disability;

(2) the homebound beneficiary was under the care of a physician who created a specific plan of care for the beneficiary; and

(3) the beneficiary's physician signed a "Home Health Certification and Plan of Care" (Medicare Form 485), setting forth, among other things, the beneficiary's diagnosis, medications, functional limitations, and plan of care, followed by a certification that the beneficiary was homebound, was under that physician's care, and was in need of home health services, such as intermittent skilled nursing care, physical therapy, speech therapy, or occupational therapy.

As part of the scheme to defraud, defendant also certified patients as homebound that were not actually homebound. As a result of defendant's false certification, home health agencies were able to bill Medicare for claims for the patients' care. For example, on December 12, 2013, defendant signed a face-to-face encounter form regarding SJ stating, "I certify that this patient is under my care and that I, or a nurse practitioner or physician's assistant working with me, had a face-to-face encounter that meets the physician face-to-face encounter requirements . . . ." Defendant, however, never saw SJ on December 12, 2013, and defendant did not have any nurse practitioners or physician's assistants that worked for defendant in December 2013. On January 15, 2014, defendant signed a Medicare Form 485 certifying SJ as homebound even though defendant knew he had no basis to certify SJ as homebound.

## Maximum Statutory Penalties

7. Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

   a. Count Nine carries a maximum sentence of 10 years' imprisonment. Defendant may also be sentenced to not more than 5 years of probation. Count Nine also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that with respect to Count Nine the judge also may impose a term of supervised release of not more than three years.

   b. Count Twenty-One carries a maximum sentence of 10 years' imprisonment. Defendant may also be sentenced to not more than 5 years of probation. Count Twenty-One also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that with respect to Count 21, the judge also may impose a term of supervised release of not more than three years.

   c. Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

   d. In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty or restitution imposed.

   e. Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 20 years' imprisonment and the maximum

7

term of probation is 10 years. In addition, defendant is subject to a total maximum fine of $500,000, or twice the gross gain or gross loss resulting from the offenses of conviction, whichever is greater, a period of supervised release, and special assessments totaling $200, in addition to any restitution ordered by the Court.

## Sentencing Guidelines Calculations

8. Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points, except as specified below:

    a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following

8

statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2015 Guidelines Manual.

    b.    **Offense Level Calculations.**

        i.    The base offense level is 6, pursuant to Guideline § 2B1.1.

        ii.    The government contends, and defendant reserves the right to challenge, that the loss amount is at least $1,500,000 and the base offense level is increased by at least 16 levels, pursuant to § 2B1.1(b)(1)(I). The government plans to prove the loss amount at sentencing.

        iii.    The government contends, and defendant reserves the right to challenge, that the base offense level is increased 2 levels, pursuant to § 2B1.1(b)(7), because defendant's conviction is for a Federal health care offense involving Medicare and the loss is more than $1,000,000.

        iv.    The government contends, and defendant reserves the right to challenge, that the base offense level is increased by 2 levels, pursuant to § 2B1.1(b)(2)(i), because the offense involved 10 or more victims.

        v.    The government contends, and defendant reserves the right to challenge, that the base offense level is increased by 2 levels, pursuant to § 3A1.1(b)(1), because defendant knew or should have known that a victim of the offense was a vulnerable victim.

vi. The government contends, and defendant reserves the right to challenge, that the base offense level is increased by 2 levels, pursuant to § 3A1.1(b)(2), because the offense involved a large number of vulnerable victims.

vii. The government contends, and defendant reserves the right to challenge, that the base offense level is increased by 3 levels, pursuant to § 3B1.3, because defendant abused a position of trust.

viii. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

ix. Defendant understands that should he falsely deny or otherwise frivolously contest the scope of the offense, such conduct would be inconsistent with acceptance of responsibility and the government will contest the application of Guideline § 3E1.1(a), and defendant could lose the two-level reduction of acceptance of responsibility.

x. Defendant understands the government will not make a motion, pursuant to § 3E1.1(b), for the third point

c. **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d. Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement

will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

11. Each party is free to recommend whatever sentence it deems appropriate, including a sentence above or below the advisory Guidelines range.

12. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13. Regarding restitution, defendant acknowledges that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant to make full restitution to victims in an amount to be determined by the Court at sentencing, which amount shall reflect credit for any funds repaid prior to sentencing.

14. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

15. Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

17. After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the superseding indictment, as well as the indictment as to defendant.

### Forfeiture

18. Defendant understands that by pleading guilty, he will subject to forfeiture to the United States all right, title, and interest that he has in any property constituting or derived from proceeds obtained, directly or indirectly, as a result of the offense.

19. Defendant acknowledges that as part of his sentence, the Court will decide, by a preponderance of the evidence, whether the government has established the requisite nexus between the offense and any specific property alleged to be subject to forfeiture.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

20. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 14 CR 50005.

21. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

22. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

   a. **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

   i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge

14

sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the superseding indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

viii. With respect to forfeiture, defendant understands that if the case were tried before a jury, he would have a right to retain the jury to determine whether the government had established the requisite nexus between defendant's offense and any specific property alleged to be subject to forfeiture.

b. **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

23. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

24. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

25. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

26. For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions,

correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

27. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

28. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

### Conclusion

29. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

30. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and

thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

31. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

32. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

33. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _MAY 20, 2016_

_____  _____
ZACHARY T. FARDON           CHARLES DEHAAN
United States Attorney      Defendant

_____  _____
SCOTT R. PACCAGNINI         DEBRA SCHAFER
Assistant U.S. Attorney     Attorney for Defendant